All rise. Please be seated. Counsel, Justice Cates has recused herself from this case. And there'll be another member of the court appointed in her place to be the third member of our panel. That new judge will listen to oral arguments, be given your briefs and all the information. And, Mr. Brewer, you can start from minute one. I think you might have used about 30 seconds before I called the recess. But go ahead and start again, give him the full time, and we'll go from there. Please proceed. Thank you. Thank you. As I indicated, it's really simple. This case is the definition of breach of fiduciary duty. It is the definition of minority shareholder oppression. If you wanted to introduce the concept of minority shareholder oppression in a law school class, this would be the perfect case for it. If you wanted to introduce the concept of breach of fiduciary duty in a law school class, this would be the perfect case for it. The defendants, the four brothers, the majority shareholders, took 100% of distributed corporate profits for themselves. The two plaintiffs, the two sisters, Kathy and Melissa, they're the minority shareholders. And from March of 08, through trial, they received an easy number to remember, zero. Zero percent of the distributed corporate profits. Why? Because the majority shareholders paid to themselves 100% of the distributed year-end profits. Prior to March of 08, the six shareholders shared the distributed profits equally. Six equal shares of the distributed year-end profits.  And it was testified that was the purpose of the director's fees, was to distribute, sort of in a monthly basis through director's fees, corporate profits. So we had distribution of profit through the director's fees each month. And then we had, at the end of the year, they looked at how much profit the company had made, and they distributed it in six equal shares prior to March of 08. There's much about Judge Crowder's order that is absolutely correct. And Judge Crowder clearly worked very hard to try to get this right. The problem with her order is that the defendants, the four individuals who breached their fiduciary duty, who engaged in minority shareholder oppression, are no worse off than if they had done the right thing from the get-go. In fact, they've been rewarded. I don't think it was Judge Crowder's intent to reward them, but the order below effectively rewards them. There's no deterrent effect to the defendants or somebody in their position to not do it. Take a shot at it. Breach the fiduciary duty. Use your majority shareholder status in an oppressive fashion. And the worst that they're going to do is have to do what they should have done from the get-go. And unfortunately, there are a couple things that are wrong with the order. One is that the order below forces the plaintiffs to give up their shareholder interest in this corporation. It's a profitable corporation. This is a significant asset for them. And the court requires the plaintiffs to sell their shares. And our objection is not with how she valued it, but the fact that the plaintiffs are required. She can value it, and then the plaintiffs at their choice could sell their shares at the value that she put it at or decide that they're going to hold on to that profitable interest in the corporation. So that's one thing that we would ask this court to do is reverse the part of the court order below that requires the plaintiffs to sell their shares in the corporation. The next thing that's wrong with the court order below is that for the years 2014 and 2015, and really now 2016, though I don't know if that's before this court, but for the years 2014 and 2015, my clients were shareholders in this corporation. And they received zero of the distributed profits for 2014 and 2015. The very thing that the trial court found was wrong in the conduct from 08 to 2013, the trial court allowed to continue into 2014 and 2015. So that was a mistake by the trial court not to order one-sixth of the distributed profits to be paid to my clients for their one-sixth interest. Each of them have a one-sixth interest in the corporations for 1450. Pretty straightforward. The most, and perhaps the one that's most interesting to the justices here, is what to do with punitive damages or disgorgement. And it's A and B of our statement of the issues presented for review. And I really think in fairness I'm arguing these in the alternative. Either there should be a war of punitive damages or there should be a disgorgement of all sums. I think the easier rule is that there's a disgorgement of all sums that the majority shareholders, the four defendants, paid to themselves during the period of breach of fiduciary duty. Makes great sense. And there's case law that we've cited from the Illinois Supreme Court for exactly that principle. Which means if you're a fiduciary, and there's no dispute that they're a fiduciary, if a fiduciary breaches their fiduciary duties, and then they engage in self-interest, self-dealing, and they pay money to themselves in breach of their fiduciary duties, then they disgorge all money that they paid to themselves during the period of time they were breaching the fiduciary duty. That is a deterrent. And that's what we believe should happen here. We think the trial court erred in not requiring a disgorgement. So by way of example, in 2013, at the end of 2013, there was almost a million dollars, 900, it's in the brief, 900,000-some dollars, in distributed corporate profits. The four defendants paid that, distributed that four ways between themselves. The two plaintiffs got 0%, even though they still had a one-sixth interest in the corporation. Corporate profits are being distributed. Of that almost a billion dollars, the four defendants split it between themselves and give nothing to the two plaintiffs. Don't hold any shareholder meetings. Don't hold any director's meetings. And just give the money to themselves. It's an egregious breach of the fiduciary duty, and there needs to be a punishment. So one way to punishment is they disgorge the profits, the money they took for themselves, and they pay it to the plaintiffs. The alternative is that punitive damages have to be assessed. The trial court came out with one order, and she didn't really rule on the issue of fiduciary duty. The second time it came back to her, she agreed because she had to. There was a breach of fiduciary duty. And then in one sentence, she said, request for punitive damages denied. That doesn't give this court anything to reveal. The Illinois Supreme Court said in the case where there is a breach of fiduciary duty, the plaintiffs are entitled to punitive damages as a matter of law. So the plaintiffs are entitled to punitive damages as a matter of law. The trial court, in one sentence, says no punitive damages. There's no reasoning. It's arbitrary. It's capricious. And it should be sent back for an award of punitive damages. Or the alternative, this court looks at the record, and this court determines the appropriate amount of punitive damages. Those are the issues I have. I'll sit down if you don't have any questions for me. No questions. Thank you, counsel. Thank you. I'm going to give you some time to rebuttal. Argue if you have to leave. Hey, Ed, it's fine to just split up your time. Your Honor, my name is Glenn Davis from Kepler Group, and I'll be doing the argument today if that's all right. That's all right. May it please the court and counsel, I think Justice Warren, you and I attended Wash U, and I think I'll probably be able to look at this case and say this is not simple. This is anything but simple. What the plaintiffs, in effect, are asking this panel to do is to overturn decades of settled Illinois law on the rights, responsibilities of shareholders, employees, directors, and officers. Just as Judge Crowder herself noted and correctly did so, that the job and corporate responsibilities and duties are legally separate and distinct. But she went on to err in this case by allowing the infusion of the employment issues to get throughout this entire court and throughout this entire matter. In effect, we wind up with an abrogation of the employment contracts. We wind up with an abrogation of her prior arbitration order, and everything having to do with the termination of employment goes to arbitration, which is correct. It has to do with the authority of the directors and the shareholders to manage the business in their proper functions. Now, their case boils down to this. Because I'm a shareholder employee, I'm entitled. I get money. Because I'm a shareholder employee, I'm entitled to this division of profits. But if you look at the law, shareholders are not entitled to some automatic, annual, forever distribution of profits just because the shareholder wants them. That is not the law. There has to be a decision by the directors. There has to be a decision on that by the board of directors, and every witness in this case agreed with that. Every single witness. In a breach of an oppression case under the Illinois statute, the oppression has to do with shareholder rights. Oppression has to go to the rights issue for the shareholder. These individuals, the plaintiffs, were never denied a vote on anything, never had their status as shareholders or directors disturbed. They still are today. Never denied a dividend or a director's fee that was paid to anyone else. Never disallowed from requesting their own notices of meetings and so forth. What they claim by conflating this whole matter is that director's fees, dividends, employment bonus, it all goes into one thing. And you can avoid Illinois law. And because this is a closely held corporation, I will just continue to award the money. And that's just not the law. I'm going to dovetail to this a little more of a shareholder point, because we wind up with the final judgment order in this case. Finally, a new ground, it applies a new standard to a closely held corporation and the authority of the directors to manage the business. The Supreme Court has spoken, Illinois has spoken loudly on this. Shareholders' rights are limited, and a majority does not engage in oppression simply by voting their strength. Now, the record in this case is replete with many, many disagreements among all the shareholders, not just between sisters and brothers, but also between brothers and brothers. There's no uniform block of majority shareholder here imposing their will and stealing money from someone. What we have here is two shareholders who wanted to go a different direction, and the other four who wanted to go in a different direction, and they were outvoted. It's simple as that. Even Mr. Coyle Sr. acknowledged they had the right to pursue their own plan of compensation. They had the right to pursue their own way. They're the majority, and I guess that's all right, I think, were his words. So the essential attribute of a shareholder in a corporation is that the shareholder is entitled to be represented in the election of board of directors and thereafter have his views expressed in that manner. There is no right of a shareholder to insist on dividends. There is no right of a shareholder to insist on or a director to insist on payment of director's fees. In fact, the bylaws here don't provide anything about mandatory director's fees. There is no provision for automatic distribution of profits because you're a shareholder in this close-knit corporation. So we are moving beyond the intent of the oppression statute. We're not dealing with oppression of shareholder rights. We are conflating all of this with the termination of their employment, which is bound for arbitration, and that is still out there. There is no resolution of all that. Now, the plaintiffs may hold on to their vision of how their father wanted to run this corporation because it's true that for a period of time, from 2001 to about 2007, six or seven out of 38 years of existence of the corporation, their father did spin off profits to shareholders. But that doesn't mean that the corporation was bound to continue that practice in the future. It doesn't mean that the corporation was bound not to change its compensation plan. There was never any evidence in this case by the plaintiffs that there was anything unreasonable about the compensation that was awarded by the corporation to any of the individual dependents. To the contrary, the compensation was based on industry surveys and discussion and factors in a bonus plan, which was adopted by the directors. Now, they can hold their breath until they turn blue and say, well, I want my money in the future because I was a shareholder. But how did they account for that money? On their tax returns, they listed it as employment income. You can't have it both ways. You can't insist on payment of money because I'm a shareholder employee. Treat it as employment income on your federal tax returns, under oath. Then come back and claim shareholder oppression, and I'm not being paid because I'm a shareholder. It doesn't wash. So their fundamental grievance, and it was described so accurately by their counsel at trial, he said there's two benefits to being a shareholder in a mechanical supply. One is the right to share in the profit. The other is to remain an employee, and irrespective of how terrible one's conduct might be, one still gets to have a paycheck and a very well-paid, you know, a well-paid employment. So these issues, from the beginning of this trial through now, through what Mr. Counsel has said today, there is an intermeshing of the employment and the shareholder issues. The employment issues go to arbitration. This court should not be distracted, as unfortunately Judge Crowder was, by treating some of the money at issue here as an award that should be given because of a shareholder status. And the same holds, too, as to the fiduciary duty violations. There's no denial here of the benefit of being a shareholder. There is no absolute right to dividends or profit-sharing or director's fees. The plaintiff's and the voluminous record in this case cannot point to a single document that shows they're entitled to dividends, director's fees, or continuing profit-sharing payments. What we do have in this case is really a continuing to this day, as quoted in a number of other cases, a tyranny of the minority. We have the minority here lining up this corporation and preventing it from going forward. Now, we also have alleged in this is a derivative case, everything that they are claiming has to do with money that goes through the corporate books. They claim a personal injury because they were disproportionately impacted by changes that took place in the management of the corporation. But disproportionate effect is not the test. This is not a typical case of self-dealing or stealing money or taking property that belongs to the individual shareholder that describes an individual claim. This is a matter of business judgment as to how the funds of the corporation are going to be distributed in the management of the business to compensate the key employees, permit the corporation to go forward. This company had significant debt. That's clear in the record. They had a huge obligation to pay off Coyle Sr.'s note, which is in the record. They had all kinds of things that bound up their ability to manage, most of which come from this side of the table. You cannot impose upon them an inability to manage the business and force a distribution of profits to someone because they claim they're a so-called shareholder employee. Now, they'll just say, well, because they paid the money out, because they paid 100% of distributed corporate profits, which is not accurate, distributed corporate profits went to all employees of the corporation, not just the senior management. The management of the corporation is entitled to make these financial decisions, and there is no simple direct correlation between their compensation and removal of direct receipts, removal of dividends, or different salaries. These were contested facts at the trial, and the trial court recognized, and the testimony was clear, there was a different compensation program from 2008 forward. There's no question about that. Were they entitled to make a change in how the business was managed and was conducted? Of course they were. But the plaintiffs would say, no, you have to continue to pay us because we're shareholders, and that is not the law. Now, they will allege that there was some individualized injury that authorized, that allowed them to bring a direct claim. Well, it's still a derivative claim. The first excuse they have for that as an individual injury is, well, we weren't paid our bonus for part of the 2000, 2007, 2008 fiscal year. First of all, they don't have us entitled to any bonus. Second of all, that is clearly an employment compensation subject to arbitration. There is no guarantee of that. And finally, that bonus was never treated as shareholder distributions, and they treated them on their own tax returns as employment compensation. So that's a non-issue. They say, well, you discontinued director's fees, but every witness in the case acknowledges that director's fees is a matter within the authority of the board of directors, and you discontinued what really amounted to very small dividends. That, again, is undisputed, that all shareholders were treated exactly the same, just like director's fees. There's no right to insist on them, and there was no discriminatory treatment, no disparity of that whatsoever. And all of these things come back to how the money comes in the corporation and how the money goes out. Just because they claim that the defendants took money they shouldn't have gotten doesn't mean that they get money that somehow otherwise they'd be entitled to. There's no direct correlation. It elevates the interests of the minority and imposes them on all of the remaining shareholders. Courts are frequently asked in these situations to resolve this type of thing. And as the first district said in the Schlensky v. Wrigley case, we have a conflict of view of responsible managers of the corporation between majority shareholders and minorities on the other. It's not our function to resolve the corporation's questions of policy and business management. The judgment of the directors of corporations enjoys the benefit of a presumption that it was formed in good faith and was designed to promote the best interests of the corporation they serve. The record is clear and unbroken in the defendant's testimony that they made their decisions on compensation, they made their decisions on the conclusion of the employment, for very different reasons of the two plaintiffs at two different points in time, in good faith, and because it was what they felt they had to do. Counsel on that. Yes, sir. The trial court referenced at least a couple times if not more the concern about not holding regular meetings, annual meetings of shareholders, and regular meetings of the directors. Yes. And just then an argument that earlier you referred to the comp plan adopted by a director. Right. How was that adopted? I take it the director was not adopted at any shareholder meetings, but... At one point in her order she does, I believe, reference that it was adopted, and then later she sort of suggests otherwise. On the point of meetings, from the beginning of this corporation, during the whole period that Jerome Coyle senior ran the corporation, there were no meetings. During the period that Pat Coyle became president and CEO of the corporation, there were a lot of meetings and a lot of plans and engagement of corporate advisors to improve upon the corporate management of the organization. Then there's a lawsuit. In 2008, in 2009, there were meetings all the way up through and after the termination of employment of the plaintiffs. And then the lawsuit, first a gender discrimination lawsuit in federal court, then this lawsuit. There were meetings all the way up until that point. At that point, and as the judge pointed out in her order, it's understandable why they wouldn't have meetings in the middle of this litigation. Did they have meetings? Yes, they had management meetings. Did they have formal director meetings with minutes and so forth? No. But the point is, under real employment law and under the Business Corporation Act, that doesn't invalidate anything that they did. And a failure to hold meetings, as put forth in our brief, is not a breach of fiduciary duty in any sense. So if you want to argue that because there were no meetings over a period of maybe a year or so, 2008 or 9 through 2014, 15, out of the 38-year existence of the corporation, so be it. But it doesn't amount to oppression. If for no other reason than because it would have been completely futile. We would have had the same six people sitting in a room, having the same disagreements, resulting in the same four or two votes. And we'd still have the lawsuit. So it would accomplish nothing to proceed and to find some oppression in their mind because they didn't have meetings. Further, they had the right to call meetings themselves under the bylaws, to notice sub-meetings. And there were, in fact, after the termination of their employment, three subsequent meetings. They showed up. They left early. One of the meetings where they wanted to have some subjects raised, they were told, we will get to your topics as soon as we finish our agenda. And then what happens? They leave. And their topics are never raised. Yet they blame the defendants for not holding meetings. Counsel, there are several issues that are, there's a difference in the briefing as far as the standard of review. Would you give me just a summary? I know there are a lot of issues, but where are those differences on the standard of review and how should this court address them? Whether or not punitive damages is an abuse of discretion standard. And that's, we've cited the Frowns v. Colectivo Development Court case on that. And as long as I'm on that topic, obviously we believe that the court was well within its discretion having found no fault with the management of the corporation itself and no fraud or other extreme behavior. Whether to order forfeiture or disgorgement is, again, an abuse of discretion standard. That's Monotronics Court v. Baylor. Whether to order plaintiffs to sell their shares, again, and the parties agree on this one, is an abuse of discretion. The sale of the shares is one of the available remedies under the shareholder oppression statute, and it can be done and is properly done in this case. And so we've cited the court to 512.56 v. 11, which notes that the court may order a sale of a petitioning shareholder's shares. Whether to award interest on profits for 2014 to 2015, decisions on damages are given deference. But again, on that point, we obviously urge the court to view this as there cannot be, in perpetuity, an award of damages going on to 2014, 2015. 2016, as of yet, I believe, was a statement suggesting that as long as these folks are all still shareholders together, there's going to be continuing controversy. This has to be solved. Issues of law, such as direct or a derivative lawsuit, is a de novo standard. There's no deference to the trial court on that. And factional findings, obviously, are manifest way to the evidence. Thank you, counsel. So I have only a brief time left. On the fiduciary duty aspect, I wanted to point to one other thing, and that is the trial court completely failed to designate what particular conduct of which particular individual defendant violated the fiduciary duty. You can't just lump them all together in one stack and say they violated fiduciary duties without pointing to something they did individually to violate fiduciary duty. Thank you. Thank you, counsel. All right. Rebut. I guess I'm going to watch you two. The new building is a whole lot prettier than the building that we attended. What's clear is that this remains a simple case. Despite defendants' efforts to muddy the waters, to obfuscate, I didn't say a word when I spoke to you before about employee status. This is not an employment case. This is a shareholder case. And the judge was careful about distinguishing about shareholder remedies. I'm talking about shareholder remedies. I haven't said a word about employee status. They're not entitled to profits because they're employees. They're entitled to profits because each of the plaintiffs owns a one-sixth interest in the corporation. Profits belong to the shareholders. Profits do not belong to the employees. I bet there are a lot of employees at McDonald's who would love if McDonald's employees had an interest in the McDonald's profits, but they don't. The plaintiffs, the defendants, were well compensated, very well compensated. Then there's year-end profits that have to be distributed. Prior to March of 08, those year-end profits were split in one-sixth interest to the shareholders. The tax treatment, it was testified to at trial. I'm sure you all may understand this. Probably my lowest grade at Wash U was in federal income tax. So I know it's not an area I'd like to spend a whole lot of time thinking about. But federal income tax, we've got six shareholder employees. The way they distributed the profits while they were all employees was as compensation so that at the end of the year, the corporation doesn't get hit with a tax. And then the shareholders get hit with a corporate gains tax. So they just pay it to the employees. But it's clear, the testimony is clear. Everybody understands it's a distribution of profits. There's nothing underhanded, dishonest. There's no equitable estoppel. We all do. There are some forms of tax planning in terms of gifts to our children and in all sorts of ways. There's nothing inappropriate about that. But that no longer worked when the plaintiffs were no longer employees. Therefore, then, the profits have to be distributed as corporate gains. I think that's it. And capital gains. Thank you. Capital gains. And they should be taxed. In fact, they'd be taxed at a lower level. But the corporation would then have to pay some taxes. There's nothing inappropriate about the way the taxes were handled. Counsel, before you run out of time, let me ask you a question. Is this a derivative action or is this a direct action? You know, looking at the trial court's order, the trial court almost appeared to be setting us a court of equity. And do you think that this, the trial court's order, relying upon the Crosby case out of Ohio, is a divergence from Illinois law? No. This is clearly, this is an absolute textbook case of a direct action. Corporate profits were distributed. The corporation is no worse off. The corporation is distributing profits. If the corporation distributes profits to six shareholders or the corporation distributes profits to four shareholders, they're distributing the same amount of year-end profits. The question is that those distribution of year-end profits go to the four defendants and none to the two minority shareholders. That is a direct action. These two received zero. These four split almost a million dollars in aid while the litigation was going on. These four split corporate profits to them. That is self-dealing of the worst sort. It's a direct benefit to those four. It's a direct injury to these two. And for the corporation, it's a wash. It's the definition of a direct action. As to the court's reliance on, the court didn't have to rely on the Crosby case. We've cited cases in our brief. It's clearly a direct action. You couldn't even think of a clearer example. A million dollars to four shareholders, zero to two shareholders, direct injury to the two that got zero, direct benefit to the four who got everything, zero impact on the corporation. I hope that answers your question. It's responsible. You just had a little bit of time left, but as to the standard review, do you have any disagreement with counsel? Except to the point that I made previously about punitive damages in a breach of fiduciary duty. We can just finish your point. Thank you. If they are required as a matter of law, then because she didn't articulate any basis, it's de novo, because you haven't given any explanation as to why she denied them. Thank you, counsel. Thank you. Counsel, thanks for your well-written briefs. Your oral arguments will take this case under advisement. We're going to recess. All rise.